**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

MARY BETH WRIGHT,

    Plaintiff, and as Representative
Of a Class of similarly situated individuals,

                                 Case No.  3:15-cv-00532-RLM-CAN

v.

MISHAWAKA HOUSING AUTHORITY,
an entity, and
COLLEEN OLUND, Executive Director
of the MISHAWAKA HOUSING
AUTHORITY,

                Defendants.

<u>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**</u>
<u>**PURSUANT TO FED. R. CIV P. 12(b)(6), 12(b)(1), and 23(d)(1)(D)**</u>

       Plaintiff's complaint fails to state any federal cause of action and should be dismissed in

its entirety.

<u>**SUMMARY OF FACTS AS ALLEGED IN THE COMPLAINT**</u>[1]

       Plaintiff has filed a shotgun-style seven-count, putative class action purportedly stating

claims under the Fair Housing Act (Count I), the Americans with Disabilities Act (Count II), the

Rehabilitation Act (Count III), 42 U.S.C. § 1983 (Count IV), Indiana state tort law (Count V),

the due process and equal protection clauses of the Fourteenth Amendment to the U.S.

Constitution (Count VI), and the "due course of law" provision of the Indiana Constitution.

Plaintiff alleges that she is a disabled individual who resided in an apartment she rented from

Defendant Mishawaka Housing Authority ("MHA"). (Dkt. # 1, at ¶¶ 6, 7). Plaintiff further

---

[1] Plaintiff's complaint omits most of the relevant facts surrounding her surrender of the premises at issue – facts that further demonstrate she has no viable claim against the defendants. Nevertheless, this Motion to Dismiss assumes the truth of the facts pled in the complaint even where the allegations are factually inaccurate.

alleges that she was hospitalized in 2015 and that she received a notice that she would be evicted from the apartment for failing to mitigate a bedbug infestation — though she does not allege the date of her hospitalization, the date she received the notice, or the number of previous notices she received. (Dkt. # 1, at ¶ 11). The "notice" Plaintiff incorporates by reference into her complaint and relies on as the basis for her claims (See Dkt #1 at ¶ 11) is attached hereto as Exhibit 1.[2] The notice explains that Plaintiff repeatedly failed to address the unsanitary conditions in her apartment over the course of six months. (See Dkt # 17-1, at p. 1). The notice then explains various ways in which Plaintiff's failure to cooperate and keep her apartment in sanitary condition constituted violations of her lease, which was therefore terminated. (See Dkt. # 17-1, at pp. 1-2). The notice advised Plaintiff that she had "the right to reply as you wish, to examine the Mishawaka Housing Authority's documents directly relevant to the termination, to use the grievance procedures (which are outlined in the Resident Grievance Procedure), and/or to defend this action in court," (Dkt. # 17-1, p. 2). As outlined in the notice, MHA removed Ms. Wright's personal property upon her surrender of the premises. (Dkt. # 1, at ¶¶ 11-12, Dkt. #17-1, at p. 3).

According to the complaint, MHA failed to provide Ms. Wright with some unspecified accommodation that she asserts she requested – but does not allege what the requested accommodation was or when she requested it. (Dkt. # 1, at ¶ 13). Ms. Wright does not allege that the unspecified accommodation she supposedly requested was reasonable, necessary, or in any

---

[2] The Court can and should consider this document in evaluating whether the complaint states any cause of action. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference[.]"); *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). This notice is central to Plaintiff's claims because her claims are based on the termination of her lease with MHA and the notice is the instrument by which that termination occurred. In fact, sending the notice is the *only* action plaintiff alleges MHA took with respect to her housing (as distinguished from her chattels). The notice is therefore the entire basis of her housing discrimination claims. The notice is also central to plaintiff's due process claims, which require her to demonstrate that the notice she received was constitutionally inadequate.

way linked to her disability-related needs. Ms. Wright does not allege that she fulfilled her contractual obligations under her lease, nor does she allege that her failure to fulfill the contractual obligations under her lease was in any way related to her disability. Ms. Wright further fails to articulate any way in which the available grievance procedures were constitutionally inadequate. Finally, Ms. Wright does not articulate how MHA's actions implicate a class of similarly-situated individuals.

## SUMMARY OF ARGUMENT

Each and every count fails as a matter of law.  Plaintiff's three discrimination claims (Counts I-III) fail because she was not discriminated against. Plaintiff alleges that she is disabled and that her lease was terminated, but she never alleges any connection between these two unrelated facts. Plaintiff's termination notice makes clear that she her lease was terminated – consistently with her lease agreement – for the non-discriminatory purpose of eradicating a bedbug infestation on the premises.  Plaintiff's failure to connect her disability to her lease termination in a way that would render the termination "discriminatory" is further exposed by comparing her paper-thin allegations to the allegations she would have needed to plead to establish a cause of action for discrimination.

There are three theories under which a plaintiff can establish discrimination: disparate treatment, disparate impact, or failure to accommodate. Plaintiff cannot establish discrimination under any of these theories. Plaintiff has not established a "disparate treatment" claim because she has not alleged that she was treated differently than any non-disabled individuals, nor has she alleged that any such treatment was because of her disability. Plaintiff has not established a "disparate impact" claim because she has not identified any rules or policies of defendants' that had an adverse impact on disabled individuals, nor has she identified any other disabled

individuals who suffered this alleged adverse impact. Plaintiff has not established a "failure to accommodate" claim because she has not alleged that she requested and was denied a reasonable accommodation that was necessary as a result of her disability.

Plaintiff's constitutional claims (Counts IV and VI) similarly fail because she has not alleged any deprivation of her constitutional rights. Plaintiff cannot state an "equal protection" claim because she was not treated differently from anybody else, and she cannot state a "due process" claim because she has not identified any defects in the process she was offered. On the contrary, the "notice" that forms the entire basis of Plaintiff's complaint demonstrates that she was afforded substantial opportunity to comply with the requirements of her lease and, when she failed to do so, was afforded various mechanisms for challenging the termination of her lease. Plaintiff offers no explanation for her failure to take advantage of these procedures.

Plaintiff's failure to state a federal cause of action defeats this Court's jurisdiction over her state law claims (Counts V and VII), which are meritless in any event.

Finally, the Court should strike Plaintiff's claims to represent a putative class. First, Plaintiff has not alleged facts indicating that any other members of her proposed class even exist. Second, Plaintiff has not alleged any facts plausibly suggesting she meets the requirements to act as representative for the (hypothetical) class members.

## <u>PLEADING STANDARD</u>

"It is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 403 (7th Cir.2010) (emphasis in original). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[I]n considering the plaintiff's factual

allegations, courts should not accept as adequate abstract recitations of the elements of a cause of

action or conclusory legal statements." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir.2009).

Instead, a plaintiff must plead "'enough <u>facts</u> to raise a reasonable expectation that discovery will

reveal evidence' supporting the plaintiff's allegations." *Id. quoting Bell Atlantic Corp. v.

Twombly,* 550 U.S 544, 556 (2007) (emphasis added).   "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at

678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting

*Twombly,* 550 U.S at 557).

**ARGUMENT**

    **I.**    **Plaintiff's Fair Housing Act Claim (Count I) fails to state a cause of action.**

    In relevant part, the Fair Housing Act (FHAA) prohibits a public entity from discriminating in the rental of a dwelling on the basis of a handicap or other protected characteristic (i.e. race, color, religion, sex, familial status, or national origin) of the renter. 42 U.S.C. § 3604.   A plaintiff may prove "discrimination" under the FHAA either by showing that she was intentionally treated differently on the basis of her protected characteristic or by "challenging practices that have a 'disproportionately adverse effect on [protected individuals]' and are otherwise unjustified by a legitimate rationale" *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.,* —— U.S. ——, 135 S.Ct. 2507, 2513 (2015), quoting *Ricci v. DeStefano,* 557 U.S. 557, 577 (2009).  These claims are referred to as "disparate-treatment" claims and "disparate-impact" claims, respectively. *Id.* A plaintiff may also prove discrimination under the FHAA by showing a failure to provide her with an "'accommodation in rules, policies, practices, or services when such accommodation may be necessary to afford [her] equal opportunity to use and enjoy a dwelling.'" *Wisconsin Cmty. Servs. v. City of Milwaukee,* 465 F.3d 737, 753 (7th Cir.2006), *quoting* 42 U.S.C. § 3604(f)(3)(B)

    The laundry list of conclusory legal statements in paragraph 18 of the complaint renders it unclear whether Plaintiff seeks to assert her FHAA claim under a theory of disparate treatment, disparate impact, or failure to accommodate. Importantly, this lack of clarity is irrelevant because Plaintiff's discrimination claims in Count I fail regardless of the theory.

    **a.**  **Plaintiff cannot state a "disparate treatment" claim under the FHAA because she has not compared her treatment with any other individuals' treatment.**

    Disparate treatment is the "classic form" and "most easily understood type of discrimination." *Texas Department of Housing & Community Affairs v.* 135 S.Ct. at 2533 (Alito,

J., dissenting). It is, simply, "[t]reating someone less favorably *than others* because of a protected trait." *Id.* (emphasis added, internal citation omitted).  To the extent Plaintiff attempts to state her FHAA claim under a "disparate treatment" theory, that claim can easily be discarded because she has not made the requisite showing "that someone else has been treated differently." *Wiggington v. Bank of America Corp.,* 770 F.3d 521, 522 (7th Cir. 2014). In other words, because Plaintiff has not alleged how anyone other than herself was treated, she has not alleged the "less favorably *than others*" component of a disparate treatment claim. Plaintiff has not alleged, for example, that individuals without disabilities continued living in bedbug-infested apartments – while failing to cooperate with exterminators for six months – without receiving a termination notice like her own. Short of such an allegation, Plaintiff has no basis for asserting that she received disparate treatment from MHA.

Plaintiff's disparate treatment claim also fails because she has not alleged that she was evicted for a discriminatory purpose. *See, e.g., See Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.,* 135 S.Ct. at 2513 (describing a disparate-treatment claim as one in which "plaintiff must establish that the defendant had a discriminatory intent or motive."); *Hopkins v. Springfield Housing Authority*, 592 Fed.Appx.528, 529-530 (7th Cir. 2015) (Denying the plaintiff's discrimination claim in part because "Hopkins concedes that the Housing Authority reduced his subsidy for a nondiscriminatory reason—because his household size changed."). In fact, Plaintiff acknowledges that the termination notice indicates it was issued for the non-discriminatory purpose of preventing the presence of bedbugs on its premises. (See Dkt #1 at ¶ 11). Plaintiff's failure to allege any discriminatory purpose of MHA's actions means she cannot make the required showing that she was treated less favorably "because of" a protected trait and therefore cannot state a claim for disparate treatment.

In short, Plaintiff's disparate treatment claim required her to allege that: 1) MHA intended to treat her less favorably than non-handicapped tenants; 2) MHA actually did treat her less favorably than non-handicapped tenants; 3) MHA treated her that way *because* she was handicapped. Plaintiff has not alleged any of these things, and her disparate treatment claim under the FHAA fails accordingly.

###### b. **Plaintiff cannot state a "disparate impact" claim under the FHAA because she has not compared the impact of MHA's policies on her and other disabled individuals with their impact on non-disabled individuals.**

Plaintiff's "disparate impact" claim is similarly as easy to discard. In order to state a disparate impact claim under the FHAA, a Plaintiff must show that the challenged policies or practices have a "disproportionately adverse effect on [protected individuals] and are otherwise unjustified by a legitimate rationale" *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.,* 135 S.Ct. at 2513 (internal citation omitted). Accordingly, when a plaintiff "doesn't provide any allegations as to other disabled tenants who were treated adversely due to [defendant's] policy or practice, [s]he doesn't state a claim for disparate impact under the FHA, ADA, or Rehabilitation Act." *A.B. ex rel. Kehoe v. Hous. Auth. of South Bend,* No. 3:11–CV–163, 2012 WL 1877740, *7 (N.D.Ind. May 18, 2012). Moreover, mere correlation showing that protected individuals are disproportionately impacted is insufficient: "[a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Texas Department of Housing & Community Affairs,* 135 S.Ct. at 2523

Plaintiff has not identified any other disabled individuals who were adversely affected by MHA's "policy or practice" and therefore has not stated a claim for disparate impact. Indeed, Plaintiff has not even identified the specific "policy or practice" that she claims has a disparate

impact on disabled individuals, nor has she identified the supposedly adverse effect – she has not, for example, alleged that the number of disabled individuals receiving termination notices for bedbug violations was disproportionate to the number of disabled individuals living in MHA housing.  Plaintiff offers no basis for concluding that some unidentified "policy or practice" had some unidentified adverse impact on any unidentified disabled individuals. Further, Plaintiff has not alleged that the undemonstrated disparate impact on unidentified disabled individuals was *caused* by the unarticulated "policy or practice". To the extent Plaintiff even attempts to state a disparate impact claim under the FHAA, she fails in just about every way imaginable.

Finally, Plaintiff fails to state a "disparate impact" claim for the additional reason that MHA's termination of her lease was justified by its need to protect other tenants from health risks. (See Dkt. #17-1, pp. 1-2). Therefore, Plaintiff cannot establish that the practice was "otherwise unjustified by a legitimate rationale." *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.,* 135 S.Ct. at 2513.

**c. Plaintiff cannot state a "failure to accommodate" claim under the FHAA because she has not demonstrated that she asked for and was denied a reasonable and necessary accommodation linked to her disability.**

Plaintiff's effort to establish that she was discriminated against through MHA's "failure to accommodate" her under the FHAA fails at least seven different ways as a matter of law.

A failure to accommodate claim is premised on a regulated entity's failure to provide disabled individuals with "'accommodation in rules, policies, practices, or services when such accommodation may be necessary to afford [them] equal opportunity to use and enjoy a dwelling.'" *Wisconsin Cmty. Servs. v. City of Milwaukee,* 465 F.3d 737, 753 (7th Cir.2006), *quoting* 42 U.S.C. § 3604(f)(3)(B). Plaintiff here has not identified any rule, policy, practice, or service for which she required an accommodation. This is the first way Plaintiff's claim fails as a matter of law. Assuming arguendo that Plaintiff claims to have required an accommodation to MHA's practice of terminating her lease for serious and repeated violations of material terms and threatening the health and welfare of other tenants, Plaintiff still has not established the elements of a claim for failure to accommodate.

"To prevail on an FHA accommodation claim, a disabled plaintiff must establish that [s]he requested and was denied an accommodation that was both reasonable and necessary to afford [her] an equal opportunity to use and enjoy [her] dwelling. US v. WHPC-DWR, LLC 491 Fed.Appx. 733, 736 (7th Cir. 2012). This means that, in order to state a cause of action for failure to accommodate, a plaintiff must show "that her requested accommodation is (1) linked to her disability-related needs, (2) necessary to afford her an equal opportunity to enjoy Section 8 benefits and (3) possible to implement." *Huberty v. Washington Cnty. Housing & Redevelopment Auth.,* 374 F.Supp.2d 768, 773 (D.Minn.2005), citing *Peebles v. Potter,* 354 F.3d 761, 769 (8th Cir.2004), *Wood v. Crown Redi–Mix, Inc.,* 339 F.3d 682, 687 (8th Cir.2003); *Lapid–Laurel,*

*L.L.C. v. Zoning Bd. of Adjustment of Scotch Plains,* 284 F.3d 442, 458-459 (3d Cir.2002). "In addition, under our circuit's burden-shifting framework, a plaintiff cannot establish a prima facie case of discrimination without showing that the accommodation [s]he sought is reasonable on its face." *Oconomowoc Residential Programs v. City of Milwaukee,* 300 F.3d 775, 783 (7th Cir.2002).

Plaintiff has not satisfied any of these requirements. Plaintiff has not identified any accommodation that she requested. Plaintiff has not identified any accommodation that MHA refused to provide. Plaintiff has not made a prima facie showing that any such accommodation would have been reasonable in light of the risks that Plaintiff's continued presence on the premises imposed on the health and welfare of other tenants. Plaintiff has not made any showing that any such accommodation would have been linked to her disability in any way – Plaintiff has not alleged that her disability somehow prevented her from complying with the terms of her lease. Plaintiff has not made any showing that any accommodation was even possible in light of HUD regulations that were binding on MHA and implemented in part to protect the health of public housing tenants.

Even if Plaintiff had satisfied each of the five requirements in the preceding paragraph – and she has not satisfied any of them – she still would not state a cause of action for failure to accommodate because she has not shown that any accommodation was necessary. First, Plaintiff has not articulated what accommodation she needed or why she needed it. Even if she had, she still would not meet the "necessity" requirement because she has not demonstrated that any accommodation MHA could have provided would have actually helped her. "[T]he concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." *Bronk*

*v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995). Plaintiff cannot meet this requirement because she cannot show that any reasonable accommodation would have ameliorated the effects of her disability.

Finally, it is worth noting that Defendants' alleged "seizure" of Plaintiff's wheelchair and furniture are irrelevant to her FHAA claim. The Fair Housing Act, as its name implies, forbids discrimination "in the rental of a dwelling." Even if Defendants had seized Plaintiff's property (which is not the case) and even if such seizure had been discriminatory (which Plaintiff has not even alleged), those facts would not bring Plaintiff any closer to establishing a claim of *housing* discrimination.

In short, there are many requirements a Plaintiff must plead in order to state a failure to accommodate claim under the FHAA – and Plaintiff has not pled any of them.

## II.    Plaintiff's Americans with Disabilities Act claim (Count II) fails to state a cause of action

The Americans with Disabilities Act ("ADA")  "forbids discrimination against persons with disabilities in three major areas of public life: (1) employment, which is covered by Title I of the statute; (2) public services, programs and activities, which are the subjects of Title II; and (3) public and private lodging, which is covered by Title III."  *Wisconsin Community Services, Inc. v. City of Milwaukee,* 465 F.3d 737, 750 (7th Cir.2006)(citations omitted).   Title II of the ADA "provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity.'" *Id.*, *quoting* 42 U.S.C. § 12132. Like under the FHAA, a plaintiff may prove discrimination under Title II of the ADA by showing: "that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or

(3) the defendant's rule disproportionally impacts disabled people." *Washington v. Indiana High School Athletic Association, Inc.,* 181 F.3d 840, 847 (7th Cir.1999).

"The requirements for reasonable accommodation under the ADA are the same as those under the FHAA." *Oconomowoc Residential Programs v. City of Milwaukee,* 300 F.3d 775, 783 (7th Cir.2002). Therefore, Plaintiff's accommodation claim fails under the ADA for the same reasons it fails under the FHAA: Plaintiff has not identified any accommodation that she requested and was denied, nor has she alleged facts to support a conclusion that any unidentified accommodation was reasonable, necessary, and linked to her disability. Plaintiff's failure to meet these requirements is explained more fully in Section I, *supra.* To the extent Plaintiff attempts to state an ADA claim under theories of disparate treatment and/or disparate impact, those claims likewise fail under the ADA for essentially the same reasons that they fail under the FHA. Stated briefly, Plaintiff has not alleged that "the defendant intentionally acted on the basis of the disability," nor has she identified any rule that "disproportionally impacts disabled people." Plaintiff therefore cannot state a claim under the framework established in *Washington,* 181 F.3d at 847.

Plaintiff makes the conclusory assertion that each and every element of her claim of discrimination under the ADA is somehow "evidenced by the seizure of her a (sic) motorized wheelchair, furniture, and eviction" but does not explain how these actions are "evidence" of anything other than themselves.  Logically, Plaintiff's assertion that the actions themselves also prove the intent behind the actions makes no sense – by Plaintiff's logic, all evictions would be *per se* discriminatory. More importantly, Plaintiff's "evidence" does not implicate the above-articulated elements of a discrimination claim – Plaintiff provides no basis for this Court to conclude that MHA's actions constituted disparate treatment, disparate impact, or a failure to

13

accommodate. Plaintiff's bald assertion that the actions themselves "evidence" discrimination and discriminatory intent is no more true the third time she repeats it than it is the first. Moreover, defendants' alleged "seizure" of Plaintiff's wheelchair and furniture are irrelevant to her ADA claim. As the complaint acknowledges, Title II of the ADA forbids an entity from denying a disabled individual "the benefits of [its] services, programs, or activities. Even if defendants had seized Plaintiff's property (which is not the case) and even if such seizure had been discriminatory (which Plaintiff has not even alleged), those facts would not bring Plaintiff any closer to establishing a claim under the ADA because that property was not a service, program, or activity provided by the defendants.

### III.   Plaintiff's Rehabilitation Act claim (Count III) fails to state a cause of action

"The Rehabilitation Act of 1973 incorporates the prohibitions contained within the Americans with Disabilities Act and requires [covered entities] to offer "reasonable accommodation" to "qualified individuals with a disability." *Bellino v. Peters*, 530 F.3d 543, 548 (7th Cir. 2008) (citations omitted). Just as under Title II of the ADA, a plaintiff may establish discrimination under § 504 of the Rehabilitation Act by showing: "that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Washington*, 181 F.3d at 847. "Title II of the ADA was modeled after  § 504 of the Rehabilitation Act; the elements of claims under the two provisions are nearly identical, and precedent under one statute typically applies to the other." *Id*, at 845, n. 6. *See also Peters v. City of Mauston*, 311 F.3d 835 (7th Cir. 2002) ("This Court looks to the standards applied under the Americans with Disabilities Act of 1990 (ADA), to determine whether a violation of the Rehab Act occurs in the

employment context."). Therefore, the reasons that Plaintiff's ADA claim fail, articulated above, apply with equal force to her Rehabilitation Act claim.

However, there are some distinctions between the Acts that make the Rehabilitation Act narrower than the ADA. "The chief difference between the two statutes is that the Rehabilitation Act applies only to entities receiving federal funding, while Title II of the ADA contains no such limitation." *Washington,* 181 F.3d at 845 n.6. "Another difference is that the Rehabilitation Act requires that the exclusion be *solely* by reason of disability, while the ADA requires only that the exclusion be by reason of the disability." *Id.* (emphasis in original). While Plaintiff has alleged that MHA receives federal funding, she has not alleged that its actions were based *solely* on her disability. Unlike her conclusory allegations regarding discrimination, Plaintiff has not even made any assertion that MHA's actions were "solely" for discriminatory purpose – nor could she, as Plaintiff admits that MHA identified the non-discriminatory purpose of eradicating the bed beg infestation in its building. Absent any allegation that this identified purpose was a sham, Plaintiff cannot show that MHA's actions were "solely" the result of her handicap and therefore cannot state a cause of action under § 504 of the Rehabilitation Act.

## IV.   Plaintiff's Federal Constitutional Claims (Counts IV and VI) fail to state a cause of action

Counts IV and VI of Plaintiff's complaint assert in conclusory terms that defendants violated Plaintiff's federal constitutional rights to due process and equal protection under the law through their "seizure" of personal property. These claims are not supported by any factual allegations and are without merit.

As an initial matter, Plaintiff's direct Fourteenth Amendment claim (Count VI) is duplicative of her Section 1983 claim (Count IV) and should be dismissed as such. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating

15

federal rights elsewhere conferred." *Albright v. Olivier*, 510 U.S. 266, 271 (1994)(internal

quotation marks omitted).  Therefore, "[t]he general rule is that a plaintiff has no cause of action

on his federal constitution claims when the defendant he wishes to hold liable is amenable to suit

under 42 U.S.C. § 1983." *Johnson v. Anderson*, No. 05 CV 0421, 2006 WL 2524125, *2, (S.D.

Ind.Aug. 29, 2006).  "In other words, when a direct constitutional claim is available to plaintiff

against the defendant and can be encompassed in a § 1983 claim, the § 1983 claim is deemed an

effective remedy for plaintiff's constitutional claims so as to defeat the existence of a direct

constitutional action." *Id., citing Carpenter v. City of Fort Wayne,* 637 F.Supp. 889, 892

(N.D.Ind.1986), *vacated and remanded,* 818 F.2d 33 (Table) (7th Cir.1987). *See also Verdon v.*

*Consolidated Rail Corp.*, 828 F.Supp. 1129, 1136 (S.D.N.Y. 1993) ("…Congress enacted § 1983

to serve as the means by which claims like plaintiff's can be brought under the Due Process

Clause of the Fourteenth Amendment *in place of* asserting the claim more generally under the

Fourteenth Amendment….Thus, we dismiss plaintiff's Fourteenth Amendment Due Process

Claim as duplicative[.]"; *Valerio v. Dahlberg,* 716 F.Supp. 1031, 1036 (S.D. Ohio 1988)

(Holding that the Court "does not recognize direct constitutional claims because 42 U.S.C. §

1983 "is the exclusive remedy for the alleged constitutional violations" and concluding "that the

Fourteenth Amendment claim in the instant case was subsumed under the time-barred 42 U.S.C.

§ 1983 claim."). Plaintiff's direct constitutional claims are therefore subsumed by her Section

1983 claim.

        Regardless, Plaintiff's attempt to state a cause of action for alleged violations of the

Fourteenth Amendment – either directly or via § 1983 – fails as a matter of law. While Plaintiff

claims to establish Fourteenth Amendment violations under both the Equal Protection Clause and

the Due Process Clause, she has not alleged facts to support the elements of either claim.

16

**a.**   **Plaintiff does not state a claim under the Equal Protection Clause.**

"To state a *prima facie* claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must demonstrate that (1) [s]he is otherwise similarly situated to members of the unprotected class; (2) [s]he was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent." *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). While Plaintiff arguably addresses the first element by alleging she is "an otherwise qualified individual with a handicap," she has not established the second or third elements – or even alleged any facts implicating them.[3]  Specifically, Plaintiff has not alleged that she was treated differently than tenants without any handicap. Plaintiff also has not alleged that either defendant took any actions with discriminatory intent. Without these allegations, Plaintiff has failed to state a cause of action under the Equal Protection Clause.

**b.**   **Plaintiff does not state a claim under the Due Process Clause.**

Plaintiff has similarly failed to state a due process claim because she has not alleged any way in which the available procedures were inadequate. Plaintiff argues that she was deprived of a property interest – but that is not what the Constitution forbids. The constitution forbids such deprivation "*without due process of law*." Plaintiff's complaint does not allege that she was denied such process.  Specifically, Plaintiff has not alleged that the termination notice she received was in any way inadequate, nor that the procedures the notice offered her for disputing the termination were inadequate. Without those allegations, Plaintiff cannot establish a due process violation.  "The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it." *Mathews v. Eldrige,* 424 U.S. 319, 348-349 (1976) (internal citation omitted). "All that is necessary is that

---

[3] Even Plaintiff's pleading of the first element strictly conclusory, as she does not allege facts to support the element – specifically, she does not allege that she fulfilled her contractual duties under her lease.

17

the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard', to insure that they are given a meaningful opportunity to present their case." *Id.*, at 349, quoting *Goldberg v. Kelly*, 397 U.S., at 268-269.

Plaintiff concedes she was given notice, and the notice plaintiff received informed her of her opportunities to be heard. (Dkt. # 1, at ¶¶ 11-12, and Dkt #17-1 p. 2). Plaintiff was given opportunities over the course of six months to correct her lease violations. (Dkt #17-1 p. 2). When Plaintiff still failed to comply and MHA terminated her lease, the notice that plaintiff admits she received informed her: "Please be advised that you have the right to reply as you wish, to examine the Mishawaka Housing Authority's documents, directly relevant to the termination, to use the grievance procedures (which are outlined in the Resident Grievance Procedure), and/or to defend this action in court." (Dkt #17-1 p. 2). In other words, the notice informed Plaintiff of the case against her and the mechanisms through which she could dispute that case, as outlined in *Mathews v. Eldridge,* 424 U.S. at 348-249.  The Constitution requires nothing more than that.

### V.      Plaintiff's state law claims (Counts V and VII) should be dismissed pursuant to pursuant to Fed. R. Civ. P. 12(b)(6) because they fail to state a cause of action and because this court lacks subject matter jurisdiction over them pursuant to Fed. R. Civ. P. 12(b)(1)

Plaintiff's state law claims are meritless and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  In the event the court declines to dispose of Plaintiff's claims on the merits, it should dismiss them pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. "[A]s a general rule, 'when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.'" *Kehoe*, 2012 WL 1877740, at *11, *quoting Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 727 (7th Cir.1998). "The exceptions to this rule are when the statute of limitations has

18

run on the state law claims, substantial judicial resources have already been used, or it is absolutely clear how the state law issues should be decided." *Id. citing Sharp Electronics Corp. v. Metropolitan Life Ins. Co.,* 578 F.3d 505, 514–15 (7th Cir.2009). The third exception, for cases in which "it is absolutely clear how the state law issues should be decided," applies when "the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim" or "when the state-law claims are patently frivolous." *Id.*

Plaintiff has not stated any federal cause of action, and the first two exceptions to the general rule against exercising jurisdiction over pendent state-law claims plainly do not apply. Nevertheless, this Court should dismiss Plaintiff's state law claims on the merits because it is "absolutely clear how the state law issues should be decided."

### a.  <u>Plaintiff cannot state a claim for conversion under Indiana state law</u>

Plaintiff has failed to plead the elements of her state law claim for conversion (Count V). Indiana law requires a plaintiff alleging conversion to establish that the defendant "knowingly or intentionally exerted unauthorized control over" property owned by the plaintiff. *Coleman v. Vukovich*, 825 N.E.2d 397, 407 (Ind.App.2005). Plaintiff falls short of this showing in two important respects. First, Plaintiff has not properly pled that she owned the property MHA allegedly seized from her surrendered apartment. This failure is important because, in fact, she did not own the property at issue: it was legally abandoned.  Plaintiff's lease with MHA and her Notice of Termination both plainly provide that any property remaining in the unit would be deemed abandoned. (Dkt. #17-1 at p.3). This provision is important even if Plaintiff did not intend to abandon her property: her apparent authorization for Defendants to remove her personal property from her premises – manifested by her failure to remove that property herself or to object to its removal– prevents Plaintiff from establishing the "knowingly or intentionally"

element of her conversion claim – Defendants did not *know* their seizure of the property was unauthorized.

While the court may not consider the fact of apparent authorization, the court *may* consider Plaintiff's failure to plead that she owned the property at issue and her failure to plead that any unauthorized seizure was knowing or intentional. The fact that seizure was actually authorized demonstrates why Plaintiff's failure to plead the intent element is fatal to her conversation claim. Because Plaintiff failed to plead the essential elements of her conversion claim, the proper outcome of the claim is "absolutely clear" and this court should dismiss it pursuant to Fed. R. Civ. P. 12(b)(6).

**b.  Plaintiff cannot state a "due course of law" claim under Indiana law.**

Plaintiff's state "due course of law" claim (Count VII) may also be readily dismissed. "In the context of a procedural right to 'remedy by due course of law' in a civil proceeding, as *IHSAA* held, the Indiana Constitution has developed a body of law essentially identical to federal due process doctrine."  *McIntosh v. Melroe Co.*, 729 N.E.2d 972 (Ind. 2000), *citing Indiana High Sch. Athletic Ass'n v. Carlberg,* 694 N.E.2d 222, 241 (Ind.1997). The differences between Indiana and federal due process protections are only in the context of criminal procedure. *Id.* Because Plaintiff's case is not a criminal one, her cause of action under the "due course of law" provision of Indiana's constitution rises and falls with her federal cause of action for a due process violation. Therefore, Plaintiff's failure to state a federal cause of action for a due process violation – for the reasons articulated above – is dispositive of her state "due course of law" claim and this court should exercise its jurisdiction to dismiss that claim on the merits.

**c.   If the court determines the merits of Plaintiff's state law claims are not clear, it should dismiss them for lack of subject matter jurisdiction.**

In the event the court determines that the proper outcome of either of Plaintiff's state law claims is not "absolutely clear" on the merits, it should decline to exercise jurisdiction over Plaintiff's state law claims and dismiss them pursuant to Fed. R. Civ. P. 12(b)(1) under the general rule that "the district court should relinquish jurisdiction over pendent state-law claims" because neither of the other exceptions applies – the statute of limitations has not expired, and this court has not yet expending substantial judicial resources on this case. *See Kehoe*, 2012 WL 1877740, at *11.

**VI.   The Court should strike Plaintiff's class allegations.**

Finally, the Court should strike Plaintiff's class allegations under Fed. R. Civ. Pro. 23(d)(1)(D). Plaintiff purports to represent a nebulous class consisting of: "all past, current and future MHA tenants with handicaps or disabilities (A) in need of accommodations or modifications of MHA policies, because of their handicaps or disabilities, in their housing and related services; (B but who did not or will not receive such accommodations or modifications (C) and who suffered or are likely to suffer injuries as a result of the actions or inaction of MHA." (Dkt. # 1, at ¶15(J)).   Plaintiff's claim fails because she does not allege facts plausibly suggesting that any similarly-situated individuals exist or that she meets the requirements for representing the (hypothetical) putative class.

"[A] court may deny class certification even before the plaintiff files a motion requesting certification", *Kasalo v. Harris & Harris,* 656 F.3d 557, 563 (7th Cir.2011). Class certification should be denied unless "the putative class satisfies all four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and any one of the conditions of Rule 23(b). The plaintiff must also show that the class is indeed

identifiable as a class." *Oshana v. Coca–Cola Co.,* 472 F.3d 506, 513 (7th Cir.2006) (internal citations omitted). Plaintiff has not sufficiently pled that she meets *any* of these requirements, as she has not alleged a single fact about any action Defendants have taken with respect to any putative class members. Plaintiff has not even proposed any way for this Court to identify the members of her vaguely-defined putative class. Instead, the complaint simply parrots the language of Fed. R. Civ. Pro. 23, asserting in conclusory terms that it applies to this case.

The first problem with Plaintiff's claim to represent a putative class is she has defined the putative class in a way rendering it impossible to ascertain the members of the class: there is no reliable mechanism for determining the "future" tenants of MHA, nor is there any reliable way for determining which past or current tenants are "disabled" and require unspecified "accommodations"

The second problem is that Plaintiff has not pleaded facts satisfying the four requirements of Rule 23(a). With respect to the commonality requirement, Plaintiff parrots Rule 23(a)(2) by stating that there are "questions of law or fact common to the class," but she does not articulate what those common questions are. (Dkt. # 1, at ¶¶ 15).    Despite her conclusory statement, Plaintiff cannot meet the commonality requirement because "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' This does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores v. Dukes,* 564 U.S. 338, 131 S.Ct. 2451, 2551 (2011)(internal citation omitted). Rather, "claims must depend upon a common contention" which "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

In order to establish the claims of the members of the purported class, plaintiff would need to allege what handicap each purported class member has, what accommodations were requested by each purported class member, whether each requested accommodation was denied, and facts plausibly suggesting each accommodation was reasonable and necessary. (Dkt. # 1, at ¶ 15(J)). These are all issues that need to be addressed on an individualized basis and preclude class certification because they do not meet the standard for commonality set by *Dukes*. Plaintiff has not alleged that any other disabled MHA tenants received termination notices for failing to maintain sanitary conditions, and therefore has not identified a class of individuals whose cases raise a "common question" under the *Dukes* standard.

Plaintiff fails to meet the typicality requirement for essentially the same reasons: the need for individualized inquiries simply to establish the claims of each class member – and the fact that the specific conduct alleged will be *different* in each case, render it impossible for plaintiff to establish that her claims are typical of the purported class. *See, e.g., Elizabeth M. v. Montenez,* 458 F.3d 779, 787 (8th Cir.2006). ("The presence of a common legal theory does not establish typicality for class certification purposes when proof of a violation requires individualized inquiry."); *Oshana,* 472 F.3d at 514 (finding that plaintiff could not establish typicality because her proposed class definition included individuals who could not state a claim.).

Plaintiff's attempt to satisfy the numerosity requirement in her complaint fails because she alleges that at least 40 qualified handicapped individuals reside at MHA, but she has not alleged the number of those who have been denied accommodations and therefore qualify to be members of the putative class as she herself has defined it.

Plaintiff's complaint fares no better with respect to the 23(b) "conditions." Plaintiff parrots Rule 23(b)(3), stating that that "the questions of law or fact common to class members

predominate," but she does not articulate what those common questions are. (Dkt. # 1, at ¶¶ 15(G)).  Plaintiff parrots Rule 23(b)(2), stating that Defendants "have acted or refused to act, and will act or refuse to act, on grounds that apply generally to a class of present, former and future tenants," but does not articulate what those grounds are or how they apply to other tenants.  (Dkt. # 1, at ¶ 14). To the contrary, she says the "allegation is evidenced" by actions specific to her.[4] Plaintiff's laundry list of reasons a class action is supposedly superior does not negate her obligation to plead facts giving rise to a plausible inference she meets the numerosity, typicality, commonality, adequacy, requirements of Fed. R. Civ. P. 23(a) and the predominance requirement of Fed. R. Civ. P. 23(b)(3), nor her obligation to propose an identifiable class. She has not pled any such facts or proposed such a class, and her class allegations should be stricken accordingly.

Plaintiff's putative class claims therefore do not satisfy the pleading standard set forth in *Twombly, Iqbal*, and their progeny. "[P]laintiffs who merely parrot the statutory language of the claims that they are pleading… have not provided the 'showing' required by Rule 8 (of the Fed. R. Civ. P)." *Brooks v. Ross*, 578 F.3d at 581. Plaintiff here has not made such a showing with respect to her claim to represent a putative class, and an order striking the conclusory allegations related to that claim is proper under Fed. R. Civ. P. 23(d)(1)(D).

WHEREFORE, Defendants respectfully pray that this Honorable Court enter an order dismissing the complaint in its entirety with prejudice.

---

[4] Plaintiff also asserts the allegation is evidenced by "the absence of procedures to protect her rights", but she has not pled any facts indicating such an absence – nor could she, since the notice Plaintiff admits she received outlined a number of procedures Plaintiff could have chosen to pursue. *See* Dkt. # 17-1 at p. 2.

Dated: March 22, 2016                    Respectfully submitted,


                                         /s/ Steven P. Lammers
                                         Steven P. Lammers, Atty. No. 26443-64
                                         SmithAmundsen LLC
                                         201 N. Illinois Street, Suite 1400
                                         Indianapolis, Indiana 46204
                                         Direct: (317) 464-4156
                                         Fax: (317) 464-4157
                                         slammers@salawus.com
                                         Attorney for Defendants, Mishawaka Housing
                                         Authority, an entity and Colleen Olund, Executive
                                         Director of the Mishawaka Housing Authority



                        **CERTIFICATE OF SERVICE**

        The undersigned certifies that on March 22, 2016, he electronically filed the foregoing **Defendants' Memorandum in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), 12(b)(1), and 23(d)(1)(D)** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:


Kent Hull
Lowell.k.hull10@nd.edu

Allan L. McLaughlin
amclaughlin@littler.com

Mark J. Plantan
mplantan@littler.com


                                    /s/ Steven P. Lammers
                                    Steven P. Lammers