UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARY BETH WRIGHT,<br>        Plaintiff,<br><br>v.<br><br>MISHAWAKA HOUSING<br>AUTHORITY and COLLEEN<br>OLUND,<br>        Defendants. | Cause No. 3:15-cv-532 RLM-MGG |

OPINION AND ORDER

Plaintiff Mary Beth Wright alleges that the Mishawaka Housing Authority and its former director, Colleen Olund, discriminated against her on the basis of her handicap when it removed and destroyed her wheelchair, furniture, and other property while she was hospitalized. She also argues that she represents a class of similarly situated persons. Both defendants move to dismiss the action and to strike the class allegations.

I. BACKGROUND

Ms. Wright alleges that she was an MHA tenant. While hospitalized in 2015 for problems associated with her disability, MHA sent a notice to her unit that it was evicting her and removing her wheelchair, furniture, and personal property because the apartment had bedbugs. Ms. Wright's attorney, R. Wyatt Mick, Jr., allegedly sent a letter to MHA and called MHA numerous times informing them of her hospitalization. Mr. Mick explained to MHA that Tom Leland, who had a durable power of attorney for Ms. Wright, held funds in a trust account to help

Ms. Wright move out of the apartment. Mr. Mick called MHA to try to make arrangements for Ms. Wright's possessions to be moved out. Mr. Mick and Ms. Wright's priest learned that MHA had already removed and destroyed her property, including her motorized wheelchair.

When Mr. Mick asked MHA at an earlier date if other units were infested with bedbugs, MHA staff responded that they couldn't provide that information. Mr. Mick inferred that other residents had bedbugs that migrated to Ms. Wright's unit. Ms. Wright alleges that Mr. Mick never spoke to the same person twice when he contacted MHA about Ms. Wright, and that his calls always went to voicemail before he could speak with someone.

Ms. Wright alleges that MHA knew for years that Ms. Wright required a wheelchair and walker. She alleges that Mr. Mick and his wife picked Ms. Wright up for church for several years and that MHA knew it was difficult for her to get into Mr. Mick's car.

Ms. Wright alleges that Mr. Mick sent a tort claims notice to MHA, an administrative complaint against MHA to HUD, and correspondence to Ms. Olund with the facts of the case, and that these documents informed MHA of Ms. Wright's need for accommodations and summarized communications between MHA and Mr. Mick.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. To survive a Rule

12(b)(6) motion, a complaint typically must meet the "notice pleading" requirement of Rule 8(a), that it set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," so the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A court considering a motion under Rule 12(b)(6) must accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff without engaging in fact-finding. Reynolds v. CB Sports Bar, Inc., 623 F.3d 1143, 1146 (7th Cir. 2010). Detailed factual allegations aren't necessary, but merely reciting the elements of a cause of action isn't sufficient.

The factual allegations must be sufficient to raise the possibility of relief above the "speculative level." Bell Atlantic v. Twombly, 550 U.S. at 555. The plaintiff must allege facts that, when "accepted as true, [ ] state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). A plaintiff's claim need not be probable, only plausible, but "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." Swanson v. Citibank, N.A., 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

3

III. DISCUSSION

Ms. Wright bases her claims of discrimination on three anti-discrimination statutes: the Federal Housing Act Amendments, the Americans with Disabilities Act, and the Rehabilitation Act. She also argues that MHA violated the Due Process Clause and Equal Protection Clause of the Constitution, and Indiana conversion and constitutional law.

a. Claims Under the Federal Anti-Discrimination Statutes

Ms. Wright's first argument is that MHA violated her rights under the Fair Housing Act Amendments when it discriminated against her on account of her disability. The FHAA makes it illegal:

> (1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of – (A) that buyer or renter . . . .
>
> (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of – (A) that person . . . . 42 U.S.C. § 3604(f).

"Discrimination" includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." § 3604(f)(3)(B).

Ms. Wright's second count is that MHA violated the Americans with Disabilities Act, which "provide[s] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Like the FHAA, the ADA requires that "no qualified

4

individual with a disability shall, by reason of such disability, be excluded from participation or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Last, Ms. Wright argues that MHA violated the Rehabilitation Act of 1973, which makes it illegal for an "otherwise qualified individual with a disability . . . , solely by reason of her or his disability, [to] be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

Under the anti-discrimination statutes, Ms. Wright has three alternative routes to prove discrimination, and their methods of proof are roughly identical across statutes. Ms. Wright can prove that MHA intended to discriminate against her, that MHA's policies or practices disparately impact the disabled without justification, or that MHA failed to reasonably accommodate her disability. *See* Wigginton v. Bank of Am., Corp., 770 F.3d 521 (7th Cir. 2014) (applying same intentional discrimination standard across all three laws); Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc., 135 S. Ct. 2507 (2015) (holding that disparate impact claims are cognizable under the FHAA); Wis. Cmnty. Servs., Inc. v. City of Milwaukee, 465 F.3d 737, 753 (7th Cir. 2006) ("[A] Title II claim under the ADA may be established by evidence that . . . the defendant's rule disproportionally impacts disabled people.") (internal quotations omitted); McWright v. Alexander, 982 F.2d 222, 228-229 (7th Cir. 1992) (holding that

disparate impact claims are cognizable under the Rehabilitation Act); Oconomowoc Residential Programs, Inc. v. City of Milwaukee, 300 F.3d 775, 783 (7th Cir. 2002) ("The requirements for reasonable accommodation under the ADA are the same as those under the FHAA."); Gile v. United Airlines, Inc., 95 F.3d 492, 497 (7th Cir. 1996) ("[T]he Rehabilitation Act incorporates the ADA's definition of reasonable accommodation . . . .").

Ms. Wright doesn't state a plausible claim of intentional discrimination. The pleading requirements for intentional discrimination aren't particularly onerous. In *Swanson v. Citibank, N.A.*, the court of appeals held that the plaintiff sufficiently pleaded intentional discrimination when she "identifie[d] the type of discrimination that she thinks occur[red] (racial), by whom (Citibank, through . . . the manager, and the outside appraisers it used), and when (in connection with her effort in early 2009 to obtain a home-equity loan)." 614 F.3d 400, 405 (7th Cir. 2010). As in *Swanson*, Ms. Wright alleged the type of discrimination she thinks occurred (disability), by whom (MHA), and when (in connection with the destruction of her property during her eviction).

But later cases hold that a plaintiff must allege facts suggesting that the defendant acted "because of [the plaintiff's] disability." Wilson v. Warren Cty., 830 F.3d 464 (7th Cir. 2016). None of the facts alleged suggest that MHA destroyed Ms. Wright's property precisely because she's disabled. Instead, the facts suggest only that it did so because she didn't maintain the apartment in a way that allowed them to treat the bedbug problem. Without alleged facts pointing to an intent to discriminate, this avenue is closed.

Ms. Wright states no plausible claim based on disparate impact. "To establish a prima face case of disparate impact, a plaintiff first must isolate and identify the specific employment practices that are allegedly responsible for any observed statistical disparities." Bennett v. Roberts, 295 F.3d 687, 698 (7th Cir. 2002). "Second, the plaintiff must establish a causal connection between the employment practice and the statistical disparity . . . ." *Id.* Ms. Wright doesn't allege any particular practice of MHA or any statistical disparity indicating that MHA acted in a way that disparately impacted the disabled.

Ms. Wright states plausible claims that MHA failed to provide a reasonable accommodation under the anti-discrimination statutes. A public entity must accommodate a person with a handicap "if such accommodation (1) is reasonable, and (2) necessary, (3) to afford a handicapped person the equal opportunity to use and enjoy a dwelling." Oconomowoc Residential Programs v. City of Milwaukee, 300 F.3d 775, 783 (7th Cir. 2002). "[A] public entity must reasonably accommodate a qualified individual with a disability by making changes in rules, policies, practices, or services when needed." *Id.* at 782-783.

The first question for the accommodation analysis is whether Ms. Wright requested an accommodation that is "reasonable." "An accommodation is reasonable if it is both efficacious and proportional to the costs to implement it." *Id.* at 784. "An accommodation is unreasonable if it imposes undue financial or administrative burdens or requires a fundamental alteration in the nature of the program." *Id.*

7

Ms. Wright's complaint is vague about what kind of accommodation her attorney requested of MHA, but the best inference is what Ms. Wright clarifies in her response: "Ms. Wright and her advocates were trying to prevent her eviction and the loss of her motorized wheelchair and personal property." This seems sufficient to put MHA on notice of the kind of accommodation Ms. Wright alleges that she sought.

Ms. Wright doesn't plausibly show that the first half of this request, "trying to prevent her eviction," is reasonable. The notice provided by MHA indicates that MHA had given Ms. Wright six months to prepare her unit for bedbug treatment, but that she still had stacks of books, laundry, and other paraphernalia that could provide harborage for them. If that's the case, Ms. Wright's complaint doesn't explain how preventing Ms. Wright's eviction would have allowed the housing authority to effectively treat the bedbug problem.

Certain types of requests in this vein might have been reasonable. For example, Ms. Wright may have needed a little extra time to get cleaning assistance to prepare the unit for treatment if, for some reason, six months wasn't enough based on the nature of her disability. But the accommodation Ms. Wright claims to seek is effectively a request that MHA cease trying to take care of the bedbug problem in the unit. Asking that the status quo persist is unreasonable when it allows the insect problem to go unabated.

The second half of the request, however, that "Ms. Wright and her advocates were trying to prevent . . . the loss of her motorized wheelchair and personal property," is an area where Ms. Wright has a plausible claim. "An

accommodation is reasonable if it is both efficacious and proportional to the costs to implement it." Oconomowoc Residential Programs, 300 F.3d at 784. It's at least plausible that MHA could have delayed destroying Ms. Wright's property at modest cost relative to the gain to Ms. Wright: being able to hold onto her means of transportation. "An accommodation is unreasonable if it imposes undue financial or administrative burdens or requires a fundamental alteration in the nature of the program." *Id.* It's plausible that moving the property for a short time until she or her representative could claim it wouldn't have imposed an undue financial or administrative burden on MHA and would have still allowed MHA to carry out its primary goal of emptying the apartment so that it could treat the bedbug problem.

The next requirement is that the accommodation is "necessary." Ms. Wright must show "that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." *Id.* Ms. Wright easily meets this burden because the electric wheelchair is an obvious source of her mobility.

Last, the accommodation must promote "equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). It's at this level that MHA argues the kind of accommodation allegedly requested falls outside the protections of the FHAA; evicting someone from her home and removing her property isn't related to "using and enjoying a dwelling."

MHA's desired approach undermines the goal of the Fair Housing Act "to provide, within constitutional limits, for fair housing throughout the United

9

States." 42 U.S.C. § 3601. The Seventh Circuit construed the clause in 42 U.S.C. § 3604(a), "otherwise make unavailable or deny, a dwelling," broadly, holding that the clause extends to the point of eviction just as it does to the point of sale or lease. Bloch v. Frischholz, 587 F.3d 771, 776 (7th Cir. 2009) (arguing that to do otherwise would allow a landlord "to rent to an African-American but then, the day after he moves in, [to] change all the locks and put up signs that said, 'No blacks allowed.' That clearly could not be what Congress had in mind when it sought to create 'truly integrated and balanced living patterns.'"). In this same way, the method a tenant is evicted and her property is moved out, if discriminatory toward a protected group, would still fall under the FHAA.

But, under *Bloch*, even if a defendant's activity falls within the scope of 42 U.S.C. § 3604(a), the defendant's behavior has to render the unit "unavailable" to the plaintiff. *Id.* The *Bloch* plaintiffs, for example, still had full use of the home even though the condo association repeatedly tore down the mezuzah[1] on their doorway, which inhibited their religious practice. The association's behavior may have rendered the unit unfit as a residence for practicing Jews, but it was still "available" to them and so they had no claim under 42 U.S.C. § 3604(a).

Unlike the phrase "otherwise make unavailable . . . , a dwelling," the phrase "to use and enjoy a dwelling" in the definition of "discrimination" is more expansive, and must encompass the process of moving out of a unit at the expiration or termination of a tenant's lease. *See generally* Stephenson v.

---

[1] A mezuzah is a rectangular box affixed to the doorpost of a Jewish home. It contains a scroll with verses from the Torah (later known as the Old Testament), that command the Israelites to affix the words of God onto the doorposts of their homes. *See Deuteronomy* 6:4-9, 11:13-21.

10

Ridgewood Vill. Apartments, No. 1:93-cv-614, 1994 WL 792581, at *4-5 (W.D. Mich. Nov. 10, 1994) (denying claim that the evicting landlord failed to reasonably accommodate plaintiff in how her possessions were removed because the proposed accommodation wasn't reasonable, not because move-out falls outside of the FHAA). Holding that the phrase doesn't reach Ms. Wright would allow an entity to avoid reasonable accommodation when any tenant is moving out of her apartment. For example, a landlord may lay down a temporary ramp over steps in order to reasonably accommodate a wheelchair-bound tenant. If that tenant wishes to move out at the end of her lease, MHA's interpretation of "to use and enjoy a dwelling" would allow the landlord to pull out the ramp during move-out (assuming it's without discriminatory intent). In other words, MHA's proposed interpretation would impose no duty on landlords to provide reasonable accommodation while tenants are leaving. This absurd result can't be the case. The landlord's duty to provide reasonable accommodation must extend until the tenant and her possessions are gone.

Removing and destroying a tenant's personal property from her unit might impact her ability to use and enjoy the dwelling. It's plausible that MHA's alleged unwillingness to accommodate Ms. Wright blocked her "equal opportunity to use and enjoy a dwelling," and so it's plausibly "discrimination" under the FHAA. 42 U.S.C. § 3604(f)(3)(B).

Because Ms. Wright pleaded prima facie claims under the FHAA, ADA, and Rehabilitation Act based on MHA's alleged lack of reasonable accommodation, the court denies MHA's motion to dismiss with respect to her first three claims.

11

### b. Claims Under the Constitution

Ms. Wright's fourth and sixth claims argue that MHA and Ms. Olund deprived her of due process and equal protection of the law in violation of the Fourteenth Amendment. Discriminatory intent is required for an Equal Protection Clause claim. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (1977). As described earlier, Ms. Wright doesn't allege a plausible claim based on discriminatory intent, so she doesn't allege a plausible Equal Protection Clause claim.

"To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." Khan v. Bland, 630 F.3d 519 (7th Cir. 2010) (internal quotations omitted). Ms. Wright doesn't articulate a plausible account of how she was denied due process. She received notice of her upcoming eviction and her obligation to remove her personal property in time. The notice advised her that she had access to MHA's grievance procedures and the courts in order to defend against the eviction. Ms. Wright's fourth and sixth claims are thus dismissed.

### c. Claims Under Indiana Law

Because Ms. Wright states a plausible claim for relief under the anti-discrimination statutes, this court has supplemental jurisdiction to rule on her claims under Indiana law. 28 U.S.C. § 1367(c)(3). Ms. Wright alleges that MHA violated her right to "have remedy by due course of law" for injury to her "person,

property, or reputation," IND. CONST., art. I, § 12, and that MHA tortiously converted her property, *see* N. Elec. Co. v. Torma, 819 N.E.2d 417, 429 (Ind. Ct. App. 2004).

"[T]he Indiana Due Course of Law requirement of Article 1, Section 12 of the Indiana Constitution is analogous to the Due Process Clause of the Fourteenth Amendment." Haimbaugh Landscaping, Inc. v. Jegen, 653 N.E.2d 95 (Ind. Ct. App. 1995). As already explained, Ms. Wright doesn't allege a plausible due process claim under the United States Constitution, and so she also doesn't allege a plausible due course claim under the Indiana Constitution.

A conversion claim must plausibly allege that MHA "knowingly or intentionally exerted unauthorized control over" Ms. Wright's property. Coleman v. Vukovich, 825 N.E.2d 397, 407 (Ind. Ct. App. 2005). If the anti-discrimination statutes required MHA to provide a reasonable accommodation to Ms. Wright in removing and destroying her property, then MHA's control over that property was "unauthorized." "The mental state of the Defendant committing the exercise of dominion is not relevant to a claim for tortious conversion." Kozma v. Medtronic, Inc., 925 F. Supp. 602, 611 (N.D. Ind. 1996). It's enough that Ms. Wright allege facts indicating that MHA intended to perform the acts that deprived her of her right to the property, even if she doesn't allege that MHA knew the deprivation to be unauthorized. *See id.* She has met this burden.

MHA argues that Ms. Wright voluntarily surrendered the premises and authorized MHA to remove her property because she failed to remove it herself or to object to its removal. Her pleadings create an inference that Mr. Mick's

13

frequent calls to MHA were to prevent the removal and destruction of her property. There's no argument on the pleadings that she tacitly agreed to MHA removing her property while her representative was actively telling MHA precisely not to do so. Even if Ms. Wright agreed to the eviction, as evidenced by her not contesting the eviction in court or through MHA's own procedures, that doesn't mean she consented to the removal and destruction of her property. If the removal and destruction was unauthorized under the anti-discrimination statutes, then Ms. Wright states a plausible conversion claim.

The court thus denies MHA's motion to dismiss as it applies to Ms. Wright's fifth claim and grants it as it applies to Ms. Wright's seventh claim.

IV. MHA's Motion to Strike Class Allegations

MHA moves to strike all allegations regarding Ms. Wright's representation of a purported class of absent persons pursuant to Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D). Rule 12(f) isn't the appropriate avenue to eliminate these allegations. Buonomo v. Optimum Outcomes, Inc., 301 F.R.D. 292, 295 (N.D. Ill. 2014); 5 Charles Alan Wright et al., Federal Practice and Procedure § 1383 (3d ed. 2016) ("[C]lass allegations, even if ultimately found insufficient for certification purposes, are neither an insufficient defense, nor are they of such a scurrilous nature as to prejudice a defendant between the filing of the complaint and the plaintiffs' motion for class certification.").

Rule 23 prescribes the particulars for class certification. "At an early practicable time after a person sues or is sued as a class representative, the

court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). This decision may be made early, "even before the plaintiff files a motion requesting certification." Kasalo v. Harris & Harris, Ltd., 656 F.3d 557, 563 (7th Cir. 2011). Further, the plaintiff is "obliged in its complaint to allege facts bringing the action within the appropriate requirements of [ ] Rule [23]." Cook Cnty. College Teachers Union, Local 1600 v. Byrd, 456 F.2d 882, 885 (7th Cir. 1972). Because the court has ample information in the complaint to decide the issue of class certification, it will do so here.

Rule 23 requires that a plaintiff satisfy each of the prerequisites for class certification: numerosity, commonality, typicality, adequacy of representation, and one of the criteria under Rule 23(b). Fed. R. Civ. P. 23(a), (b). If any of these elements is missing, the class can't be certified. "Commonality" requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Ms. Wright's complaint, while plausible, rests on narrow footing: allegations that MHA violated the anti-discrimination statutes when it didn't allow a reasonable accommodation for her handicap when it removed her personal property from her unit and destroyed it after she was ordered to vacate. Her pursuit of a class action indicates that she believes that MHA fails to accommodate handicapped persons more pervasively. But the facts of this case deal with a very narrow form of denial of accommodation that would be difficult to demonstrate as applicable to more than a single plaintiff, let alone a class large enough that joinder is impracticable under Rule 23(a)(1).

Ms. Wright points to *Buonomo v. Optimum Outcomes, Inc.* as precedent for delaying class certification decisions, but *Buonomo* only does so for the part of the plaintiff's proposed class that fits into a clear legal and factual formula. 301 F.R.D. 292, 298-299 (7th Cir. 2014). *Buonomo* strikes part of the proposed class on "typicality" grounds because "the named plaintiff's claims must share the same essential characteristics as the claims of the class at large." *Id.* at 297 (quoting Muro v. Target Corp., 580 F.3d 485, 492 (7th Cir. 2009)). Ms. Wright doesn't demonstrate that her individual claim is "typical" of that of any proposed class either. *Buonomo* analyzes the court of appeals' *Soppet* decision for the proposition that the claims of the named plaintiff ought to fall into the same factual formula as those of the class. *See id.* at 296 ("A human being who called Cell Number would realize that Customer was no longer the subscriber. But predictive dialers lack human intelligence and, like the buckets enchanted by the Sorcerer's Apprentice, continue until stopped by their true master. Meanwhile Bystander is out of pocket the cost of the airtime minutes and has had to listen to a lot of useless voicemail.") (quoting Soppet v. Enhanced Recovery Co., 679 F.3d 637, 638-639 (7th Cir. 2012)). But in this case, the kinds of accommodations requested by class members will vary a great deal. Plaintiffs might have different handicaps and request different accommodations for them. Whether a proposed accommodation is "reasonable" under the criteria described earlier will vary a great deal from case to case. This isn't a situation where the formula of Ms. Wright's alleged denial could be used for others. Ms. Wright

doesn't show common questions of law or fact or that her case is typical for the class. The court thus grant MHA's motion to strike class allegations.

### V. Conclusion

The court GRANTS MHA'S MOTION TO DISMISS [Doc. No. 30] IN PART as to Ms. Wright's fourth, sixth, and seventh claims, DENIES THE MOTION IN PART as to Ms. Wright's first, second, third, and fifth claims, and GRANTS MHA's motion to strike the class allegations [Doc. No. 32].

SO ORDERED.

ENTERED:  December 1, 2016

 /s/ Robert L. Miller, Jr.
Judge
United States District Court